Tlie opinion- of the Court was delivered by
Fenner, J.
This is an hypothecary action. The substantial averments of plaintiffs’ petition are : that they are judgment creditors of the late Mrs. Eliza W. Warfield, by reason of a- judgment for $5,000, ■ with 8 per cent, interest from May 3d, 1860, rendered in their favor on March 20th, 1874, and inscribed in the Mortgage Office of Ouachita Parish on the 21st of March, 1874; that said judgment is subject to certain credits, viz: a credit of $95.10, arising from a judicial sale of -certain property of Mrs. Warfield, known as the Bon Air Plantation, under executions issued upon certain judgments against her, of earlier *965 date of rendition and record and, therefore, of superior rank to that of petitioners, at which sale petitioners became the purchasers at the price of $3375.48, of which $3280.38 was appropriated, in satisfaction of said superior claims, and the balance, aforesaid, of $95.10 was credited on petitioners’ judgment; and a further credit of $1934.50, being the price of certain other property sold on September 7th, 1879, at judicial sale, in the bankruptcy of Mrs. Warfield, and bid in at that price by petitioners, which price was retained by them as a credit on their said judgment; that their judgment is subject to no other credits; that at the date of record of their said judgment, Mrs. War-field owned certain immovable property, known as “ Oak Grove Plantation,” in Ouachita Parish, which the defendant, Ludeling, now possesses and claims to own, and which is subject to their judicial mortgage, and that they know of no other property of defendant in the judgment on which their rights can be enforced ; that execution against judgment debtor has been issued and returned nulla bona; that the notices required by law have been given, and all legal delays have elapsed, and- judgment is asked recognizing their mortgage and decreeing the property to be sold.
No answer having been filed within the legal delay, default was taken against the defendant. He then appeared and set aside the default by filing an answer, in which, after first pleading the general denial, he files a plea or exception of discussion, averring the existence of other property belonging to Mrs. Warfield and duly described, which he claims must be discussed, and avers his readiness to furnish the funds necessary to pay the costs of its discussion. Passing by, for the moment, other defenses, he averred that he purchased from the succession of B. II. Dinkgrave, and called the said succession in warranty, through its administrator, W. H. Dinkgrave.
The warrantor appeared and filed an answer, in which he also set up the plea of discussion.
We will first dispose of the plea of discussion.
That the plea of discussion is a dilatory exception, required to be pleaded in limine and in the manner prescribed by the Code of Practice for such exceptions, has been distinctly ruled by this Court and is a settled rule of practice. Dwight vs. Linton, 3 Rob. 57; State vs. Bradley, 11 An. 643.
The Code of Practice itself defines dilatory exceptions to be, “ such as do not tend to defeat the action, but only to retard progress ;” Art. 332; and Pothier says: “ The exception of discussion is of the ■class of dilatory exceptions, since it only tends to put off the action of the creditor until after the time of the discussion, and not to exclude it entirely.” 1 Pothier Ob., Nos. 410, 411.
*966 Prior to 1839, under Articles 333 and 336 of the former Code of Practice, dilatory exceptions might be pleaded in the answer and even after default, as was decided in Magee vs. Dunbar, 10 La., decided in 1837. Thereafter, the legislature passed Act 53 of 1839, which provided, in its 23d Section, “ hereafter no. dilatory exceptions shall be allowed in any case after a judgment by default has been taken, and, in every case, they must be pleaded in limine litis; nor shall such exceptions hereafter be allowed in any answer in any cause.” Since the adoption of this law, no case exists in which such exception has been permitted after default, or in an answer, unless, at least, the exception was pleaded prior to any plea to the merits.
In the Revised Code the above provision of the Act of 1839 is incorporated literally, as part of Art. 333, but by a piece of clumsy carelessness, Art. 336 is left as it formerly stood; so that, in one Article, the Code declares that dilatory exceptions shall not “ hereafter be allowed in any answer in any cause;” while, in the other, it says: “the defendant must plead in his answer all dilatoiy exceptions on which he intends to rely.” This apparent contradiction must be reconciled in such manner as to give effect to the legislative intention, and the history we have given'of the legislation, and the careful incorporation of the provision of the Act of 1839 in the new Code, leave no doubt that it was intended to govern and have effect, and that the omission to qualify the terms of Art. 336 was a transparent oversight. In any event, the objection that the plea was filed after judgment by default, would be fatal to defendant’s pretension, because that clause of Art. 333 is not inconsistent even with Art. 336.
This, as we view it, eliminates from the case all questions as to the right of defendant to require plaintiffs to look to any other property for satisfaction of his debt, before subjecting that of defendant to Ms mortgage. Nor is the case affected by the fact that the title of some of the property formerly belonging to Mrs. Warfield, passed directly to plaintiffs themselves. The title to said property either validly passed to plaintiffs, or it did not. If it did, being a title from judicial sale freeing it from mortgages, the property is clearly not liable for Mrs. Warfield’s debts. If it did not, then the property still belongs to Mrs. Warfield, and, like any other property of hers, could only be subjected under the plea of discussion. The attack, therefore, made upon the title of plaintiffs to “ Bon Air” and other property, has no relevancy to the issues remaining in the case, and must be ilisregarded.
The only serious question left in the case is the claim of defendant and his warrantor, that at the time when Diukgrave bought the Oak Drove plantation from Mrs. Warfield, she owed a large amount of State and Parish taxes on this and other property, for the whole of *967 which the State and Parish liad a lien and privilege upon said plantation, priming the mortgage of plaintiffs and all other mortgages ; that the said Dinkgrave paid said taxes, exceeding in amount the price stipulated in the deed from Mrs. Warfield to himself, as the real consideration of said purchase, and, by reason of said payment, became subrogated to the rights of lien and privilege of the State and Parish, entitled to preference over the claim of plaintiffs.
Referring to the act of sale from Mrs. Warfield to Dinkgrave, we find tlie consideration expressly recited to be “ the sum of $3,782.36 cash to her in hand paid, receipt whereof she hereby acknowledges.”
Defendant having no rights except such as are derived from that deed, is a privy thereto and bound by its recitals equally with Ms author. Greenleaf on Evidence, Sec. 23. The rule is inflexible, as against parties to such acts and their privies, that “ parol evidence shall not be admitted against or beyond what ife contained in the acts, nor on what may have been said before, or at the time of making them, or since.” C. C. 2276.
The parol evidence offered to prove that the price recited in the act was not paid, as therein stated, and that the real consideration was not so much money paid to her, but was the payment of the taxes referred to by Dinkgrave, was, therefore, inadmissible.
This price was the money of the vendor, Mrs. Warfield, and, if it was employed in the payment of taxes, those taxes wore paid and extinguished with her money, and gave rise to no rights in favor of her vendee or defendant. This was precisely and pointedly decided in Sorapuru vs. Lacroix, 1 La. 373.
If Dinkgrave had paid the taxes before he acquired the property, under no circumstances could he have claim to subrogation.
“ Póur opérer la subrogation de l’acquéreur dans' les droits des créanciers sans stipulation, il faut qu’il les ait payés depuis son acquisition. Elle n’existerait pas s’il les avait payés auparavant sans stipuler la subrogation.” 7 Tonllier, No.. 143.
If he paid afterwards, in this case, he must have paid as her agent, and with her money.
•But it seems to us plaintiffs have little concern .with these questions. They are not attacking the title of defendant; they are neither parties nor privies to the transactions between Mrs. Warfield and his author, Dinkgrave. They are enforcing their purely legal rights as mortgage creditors, and are entitled to be paid out of the property by preference over all except mortgages or privileges which rank their own. If mortgages or privileges, which once ranked theirs, have been extinguished, by whomsoever or by whatever means, they no longer stand in the way. of plaintiffs’ rights. Now, the fact is, that the taxes, of which defend *968 ant now claims the benefit, have been paid, and the liens and privileges securing them have been extinguished. The evidence shows that this was the very object of the payment, and the consideration upon which Oak Grove Plantation was released from the seizure which operated equally upon it and Bon Air. If the liens and privileges were not extinguished, how was it that Bon Air and other property was sold and passed free from such privileges ? But if they were extinguished as to other property, how did they survive as to Oak Grove 9 The fact is, they were blotted out absolutely, and survive in favor of no one and to no extent.
Dinkgrave bought this jn’operty freed from taxes, and subject to the judicial mortgage of plaintiffs, of which the public records gave him due notice. The law informed him that the property would be subject to payment of plaintiffs’ debt, unless paid by Mrs. Warfield, personally, or out of proceeds of other property remaining in her ownership after the sale. So well aware of this was he, that, not content with her warranty, he required and received the additional warranty of a third person, Mrs. Strother. The contingency guarded against now happens, and he must look for his protection to his warrantors.
We, therefore, think that the Judge ad hoe erred in allowing any portion of the taxes.
The amendment asked as to the description of the land, cannot be allowed, since the notices aud delays can only be held to apply to the land described in the petition.
The allegations of defendant’s answers lay no foundation for proof or allowance of improvements, and the claim therefor was properly non-suited, with reserve of his rights to recover in proper action.
The exception of defendant, based on effect of the monition taken out as to the sale in the succession of Dinkgrave, is frivolous, and is not, indeed, urged in the argument.
The'prayer of the curator ad hoc of Mrs. Strother, to amend the judgment by allowing him an additional fee for services in this Court, is evidently invoking at our hands the exercise of original jurisdiction. I-Ie must apply to the lower court.
It is, therefore, ordered, and decreed, that the judgment appealed from bo amended, by striking therefrom that portion which allows the warrantor, succession of Dinkgrave, the amount of $936.20, as taxes paid by him, and directs this amount to be paid by preference out of the proceeds of sale; and that, in all other respects, the said judgment be affirmed, appellant to pay costs of this appeal.